UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X     Case No.:
JANE DOE,

                      Plaintiff,     **COMPLAINT**

              -against-     Plaintiff Demands a Trial
                                                          By Jury

AMDA, INC., individually and d/b/a
THE AMERICAN MUSICAL and DRAMATIC
ACADEMY, and MANHATTAN STRATFORD
ARMS, INC.,

                     Defendants.
-------------------------------------------------------------X

Plaintiff, JANE DOE, by and through her attorneys, the Derek Smith Law Group, PLLC, upon information and belief, complains of Defendants as follows:

## NATURE OF THE CASE

1. Plaintiff complains under Title IX, 20 U.S.C. § 1681(a), for the denial of benefits of an educational program. Plaintiff also seeks to remedy violations of the New York State, New York City and New York Common Law to redress the injuries Plaintiff has suffered as a result of being harassed and discriminated against on the basis of her sex/gender, and for making complaints about such discrimination.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

3. This action involves a Question of Federal Law.

4. Venue is proper in this district pursuant to 20 U.S.C. §1391(b) because Defendant AMDA, INC., individually and d/b/a THE AMERICAN MUSICAL and DRAMATIC ACADEMY is located in this judicial district and a substantial part of the events which give rise to the claims herein occurred in this district

## PARTIES

5. Plaintiff is a female resident of the State of New York, County of New York.

6. Plaintiff is referred to herein as JANE DOE due to the extreme hardship such revelation of her identity would cause and the need to protect victims of sexual violence. "Courts have discretion to permit such pleading in appropriate circumstances." See *Doe v. Del Rio*, 241 F.R.D. 154, 157 (S.D.N.Y. 2006)

7. Defendant AMDA, INC. is a domestic not for profit corporation that does business in the State of New York. (herein also referred to as "AMDA")

8. At all times material, Defendant AMDA, INC. did and does business as THE AMERICAN MUSICAL and DRAMATIC ACADEMY.

9. At all times material, Defendant AMDA, INC. owned and operated an educational program in the State and City of New York, County of New York called THE AMERICAN MUSICAL and DRAMATIC ACADEMY.

10. At all times material, Defendant MANHATTAN STRATFORD ARMS, INC., is a domestic corporation that does business in the State of New York. (herein also referred to as "MSA")

11. At all times material, Plaintiff was a student at Defendant THE AMERICAN MUSICAL and DRAMATIC ACADEMY located at 211 West 61st Street, New York, New York 10023.

12. At all times material, Defendant THE AMERICAN MUSICAL and DRAMATIC ACADEMY (hereinafter referred to as AMDA) was and is an "educational program or activity receiving Federal financial assistance," as defined in Title IX, 20 U.S.C. § 1681(a), and a "place of accommodation," as defined in the New York Executive Law §292(9) and the New York City Administrative Code §8-107(4)(a).

13. Plaintiff is informed and believes, and based thereon, alleges that at all times mentioned herein, each of the defendants was the agent, servant and employee, coventurer and co-conspirator of each of the remaining defendants, and was at all times herein mentioned acting within the course, scope, purpose, consent, knowledge, ratification, and authorization of such agency, employment, joint venture and conspiracy.

## MATERIAL FACTS

14. Plaintiff, JANE DOE was assigned to live on campus in Defendant MSA's residence hall known as "Stratford Arms" or "Strat" at 117 West 70th Street, New York, NY.

15. Defendant MSA owned and/or operated the above residence hall.

16. Defendant AMDA owned and/or operated the above residence hall.

17. On or about March 19, 2015, around midnight, Plaintiff was sexually assaulted and raped by two male students in her residence hall known as "Stratford Arms."

18. The above two male students are known herein as Student #1 and Student #2.

19. On or about March 23, 2015, Plaintiff reported the sexual assault and rape to Robert Manganaro, Director of Student Affairs and John Guariglia, Campus Security at Defendants.

20. On or about March 23, 2015, Defendants began an investigation into the allegations of the sexual assault and rape.

21. Rather than take swift and appropriate action, Defendants long delayed resolution of the matter.

22. Rather than take swift and appropriate action, Defendants kept Plaintiff in the same living quarters as one of her rapists.

23. For approximately 75 days after the sexual assault, Defendants forced Plaintiff to live in the same residence with one of her rapists.

24. Every one of those days that her rapist was still living in her residence hall, Plaintiff would either see him or would fear seeing him.

25. Every time Plaintiff would see her rapist in her residence hall, she would suffer severe emotional trauma, flashbacks and exacerbation/aggravation/activation of post traumatic stress disorder.

26. On many occasions, Plaintiff would encounter her rapist on the staircase and even in the elevator when she would have to be alone with him.

27. On an almost daily basis, Plaintiff was forced to see her rapist in the kitchen, the laundry room and other areas throughout the residence hall.

28. Every time Plaintiff saw the rapist, this caused Plaintiff to relive this traumatic assault and she would fear being raped by him again.

29. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

30. Defendants failed to make other appropriate living arrangements for the alleged rapists or Plaintiff during the investigation and they failed to take appropriate and prompt action.

31. Finally, on or about June 1, 2015, Defendants concluded their investigation.

32. On or about June 4, 2015, the alleged rapist was finally removed from Plaintiff's residence hall.

33. Defendants failed to take *immediate* action to eliminate the harassment, prevent its recurrence, and address its effects.

34. Defendants failed to take immediate steps to protect the student in the educational setting.

35. Additionally, Defendants failed to provide Plaintiff with proper protection under Title IX including a proper hearing as required by law.

36. Defendant also issued Plaintiff an "academic warning" for missing certain classes due to panic attacks she was suffering as a result of the sexual assaults.

37. Defendants further failed to provide an escort to ensure that Plaintiff can move safely between classes and activities.

38. The Department of Education Office for Civil Rights ("OCR") publishes a "Dear Colleague Letter" ("DCL") on sexual harassment for educational institutions.

39. The DCL discusses "Title IX's requirements related to student-on-student sexual harassment, including sexual violence, and explains schools' responsibility to take immediate and effective steps to end sexual harassment and sexual violence." It states that "[i]f a school knows or reasonably should know about student-on-student harassment that creates a hostile environment, Title IX requires the school to take *immediate* action to eliminate the harassment, prevent its recurrence, and address its effects." *Id.* at 4. (emphasis added)

40. The DCL also includes the following:

- A school's grievance procedures must "provid[e] for the prompt and equitable resolution of sex discrimination complaints."

- Schools must "provide equitable grievance procedures. Throughout a school's Title IX investigation, including at any hearing, the parties must have an equal opportunity to present relevant witnesses and other evidence. The complainant and the alleged perpetrator

> must be afforded similar and timely access to any information that will be used at the hearing."

- "Grievance procedures should specify the time frame within which: (1) the school will conduct a full investigation of the complaint; (2) both parties receive a response regarding the outcome of the complaint; and (3) the parties may file an appeal, if applicable. Both parties should be given periodic status updates. Based on OCR experience, a typical investigation takes approximately 60 calendar days following receipt of the complaint. Whether OCR considers complaint resolutions to be timely, however, will vary depending on the complexity of the investigation and the severity and extent of the harassment." *Id.* at 12.

- "Recipients must ensure that employees designated to serve as Title IX coordinators have adequate training on what constitutes sexual harassment, including sexual violence, and that they understand how the recipient's grievance procedures operate." *Id.* at 7. In addition, "[a]ll persons involved in implementing a recipient's grievance procedures (e.g., Title IX coordinators, investigators, and adjudicators) must have training or experience in handling complaints of sexual harassment and sexual violence, and in the recipient's grievance procedures."

- "A school should notify a complainant of the right to file a criminal complaint, and should not dissuade a victim from doing so either during or after the school's internal Title IX investigation."

- "Schools should not wait for the conclusion of a criminal investigation or criminal proceeding to begin their own Title IX investigation and, if needed, ***must take immediate steps to protect the student in the educational setting.*** For example, a school should not delay conducting its own investigation or taking steps to protect the complainant because it wants to see whether the alleged perpetrator will be found guilty of a crime." (emphasis added)

- The Title IX regulations require that each recipient publish a notice of nondiscrimination stating that the recipient does not discriminate on the basis of sex in its education programs and activities, and that Title IX requires it not to discriminate in such a manner.*Id* at 6. . . . The notice must be widely distributed to all students, parents of elementary and secondary students, employees, applicants for admission and employment, and other relevant persons.. . . OCR therefore recommends that a recipient's nondiscrimination policy state that prohibited sex discrimination covers sexual harassment, including sexual violence, and that the policy include examples of the types of conduct that it covers.

- In addition to ensuring full compliance with Title IX, schools should take proactive measures to prevent sexual harassment and violence. OCR recommends that all schools implement preventive education programs and make victim resources, including comprehensive victim services, available. Schools may want to include these education programs in their (1) orientation programs for new students, faculty, staff, and employees; (2) training for students who serve as advisors in residence halls; (3) training for student

athletes and coaches; and (4) school assemblies and "back to school nights." These programs should include a discussion of what constitutes sexual harassment and sexual violence, the school's policies and disciplinary procedures, and the consequences of violating these policies.

- Title IX requires a school to take steps to protect the complainant as necessary, including taking interim steps before the final outcome of the investigation. The school should undertake these steps promptly once it has notice of a sexual harassment or violence allegation. The school should notify the complainant of his or her options to avoid contact with the alleged perpetrator and allow students to change academic or living situations as appropriate. For instance, the school may prohibit the alleged perpetrator from having any contact with the complainant pending the results of the school's investigation. When taking steps to separate the complainant and alleged perpetrator, a school should minimize the burden on the complainant, and thus should not, as a matter of course, remove complainants from classes or housing while allowing alleged perpetrators to remain.

- Schools should be aware that complaints of sexual harassment or violence may be followed by retaliation by the alleged perpetrator or his or her associates. For instance, friends of the alleged perpetrator may subject the complainant to name-calling and taunting. As part of their Title IX obligations, schools must have policies and procedures in place to protect against retaliatory harassment.

- Depending on the specific nature of the problem, remedies for the complainant might include, but are not limited to: providing an escort to ensure that the complainant can move safely between classes and activities; ensuring that the complainant and alleged perpetrator do not attend the same classes; moving the complainant or alleged perpetrator to a different residence hall or, in the case of an elementary or secondary school student, to another school within the district; providing counseling services; providing medical services; providing academic support services, such as tutoring;

- Requiring the school to create a committee of students and school officials to identify strategies for ensuring that students:(1) know the school's prohibition against sex discrimination, including sexual harassment and violence; (2) recognize sex discrimination, sexual harassment, and sexual violence when they occur; (3) understand how and to whom to report any incidents; (4) know the connection between alcohol and drug abuse and sexual harassment or violence; (5) feel comfortable that school officials will respond promptly and equitably to reports of sexual harassment or violence;

- Conducting periodic assessments of student activities to ensure that the practices and behavior of students do not violate the school's policies against sexual harassment and violence;

- Conducting, in conjunction with student leaders, a school or campus "climate check" to assess the effectiveness of efforts to ensure that the school is free from sexual harassment and violence, and using the resulting information to inform future proactive steps that will be taken by the school;

41. Defendants violated all of the above requirements of Title IX.

42. Upon information and belief, Defendants also underreported the amount of sexually violent incidents that occurred on campus during the years prior to plaintiff's enrollment at Defendants.

43. Defendants did not ensure that all faculty and staff were sufficiently trained on responding to and reporting these incidents to appropriate officials.

44. Defendants failed to appropriately educate students on sexual harassment and sexual violence.

45. Defendants did not always comply with requirements in state law for distribution of relevant policies.

46. Furthermore, under Title IX, both the accuser and accused have equal rights, such as the right to:

- Have an adviser of choice present during the process (this includes an attorney if allowed at all by schools)

- Present evidence or have witnesses speak on their behalf

- Have timely access to information that will be used at the hearing

- Be present at pre-hearing meetings that provide an opportunity to present their testimony

- Receive the final hearing decision in writing at the same time as the other party without being required to sign a non-disclosure agreement

- Have the right to appeal a final decision

47. Defendants violated Plaintiff's rights under Title IX by failing to provide all of the above.

48. Defendants refused to allow Plaintiff to have a hearing and present evidence.

49. Rapists, (Student #1 and Student #2), were found in violation of Defendant AMDA's Basic Rules of Conduct. Student #1 and Student #2 were also found in violation of AMDA's Sexual Misconduct Policy.  Student #1 and Student #2 were suspended from AMDA and expelled from AMDA's residence halls until February, 2015.

50. On or about June, 30, 2015, Plaintiff was notified via mail that Student #1 and Student #2 submitted appeal letters from the original rulings. All sanctions that Defendant THE AMERICAN MUSICAL and DRAMATIC ACADEMY imposed were upheld with one exception. Student #2's expulsion from AMDA's residence halls was overturned and Student #2 was allowed to move back in to the residence hall after Plaintiff left the school in 2015.

51. Plaintiff complained to an official of Defendants who has authority to address the alleged discrimination and to institute corrective measures on Defendants behalf and said official had actual knowledge of discrimination and failed to adequately respond.

52. At all times material, Defendants acted with deliberate indifference to the discrimination.

53. As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, the suffered severe emotional distress and physical ailments.

54. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

55. As Defendants' conduct has been malicious, willful, outrageous, conducted with full knowledge of the law, and with reckless indifference, Plaintiff demands Punitive Damages as against Defendants, jointly and severally.

# AS A FIRST CAUSE OF ACTION
# UNDER FEDERAL LAW
# <u>DISCRIMINATION UNDER TITLE IX</u>

56. Plaintiff repeats, reiterates and realleges each and every paragraph as if said paragraph was more fully set forth herein at length.

57. Title IX provides, in relevant part, that "No person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

58. (1) Plaintiff as a woman is a member of a protected group; (2) she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (3) the harassment was based on sex; (4) the harassment was sufficiently severe or pervasive so as to alter the conditions of her education and create an abusive educational environment; and (5) some basis for institutional liability has been established.

59. 20 U.S.C. §1681(a) states in relevant part as follows:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discriminate under any education program or activity receiving Federal financial assistance.

60. Plaintiff was discriminated against because of her sex under 20 U.S.C. §1681(a) and denied the benefits of Defendant's educational program and has suffered damages as set forth herein.

61. Defendants further violated Title IX by failing to educate students on sexual harassment and assault, failing to take prompt action, failing to afford Plaintiff a hearing with the right to present evidence, and failing to remove the alleged rapist from Plaintiff's residence hall.

## AS A SECOND CAUSE OF ACTION
## UNDER FEDERAL LAW
## <u>RETALIATION UNDER TITLE IX</u>

62. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

63. Under 20 U.S.C. §1681(a) retaliation also constitutes discrimination.

64. After Plaintiff complained of discrimination, Defendants retaliated against Plaintiff by, failing to take prompt and appropriate action; failing to afford Plaintiff a hearing with the right to present evidence, and not removing the alleged rapist from Plaintiff's residence hall or finding alternate suitable living accommodations for Plaintiff.

65. Defendants retaliated against Plaintiff by not taking appropriate action in retaliation for Plaintiff's complaints of the sexual assault and in not following proper procedures under Title IX.

## AS A THIRD CAUSE OF ACTION
## UNDER NEW YORK STATE LAW
## <u>EXECUTIVE LAW §296</u>

66. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

67. New York State Executive Law §296 states in pertinent part: 4. It shall be an unlawful discriminatory practice for an education corporation or association which holds itself out to the public to be non-sectarian and exempt from taxation pursuant to the provisions of article four of the real property tax law to deny the use of its facilities to any person otherwise

qualified, or to permit the harassment of any student or applicant, by reason of his race, color, religion, disability, national origin, sexual orientation, military status, sex, age or marital status, except that any such institution which establishes or maintains a policy of educating persons of one sex exclusively may admit students of only one sex.

68. New York State Executive Law §296 further states in pertinent part: 2. (a) It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed, color, national origin, sexual orientation, military status, sex, or disability or marital status of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof, including the extension of credit, or, directly or indirectly, to publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of race, creed, color, national origin, sexual orientation, military status, sex, or disability or marital status, or that the patronage or custom thereat of any person of or purporting to be of any particular race, creed, color, national origin, sexual orientation, military status, sex or marital status, or having a disability is unwelcome, objectionable or not acceptable, desired or solicited.

69. Defendants violated the above sections of Executive Law 296 as stated herein.

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW
## AIDING & ABETTING

70. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

71. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

"For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

72. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

## AS A FIFTH CAUSE OF ACTION
## UNDER NEW YORK ADMINISTRATIVE CODE TITLE 8

60. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

73. Tile 8 of the New York City Administrative Code states in relevant part as follows: 4. Public accommodations. a. It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of the actual or perceived race, creed, color, national origin, age, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof,

or, directly or indirectly, to make any declaration, publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages, facilities and privileges of any such place or provider shall be refused, withheld from or denied to any person on account of race, creed, color, national origin, age, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status or that the patronage or custom of any person belonging to, purporting to be, or perceived to be, of any particular race, creed, color, national origin, age, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status is unwelcome, objectionable or not acceptable, desired or solicited.

74. Defendants violated the above section as stated herein.

## AS A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

75. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

76. The New York City Administrative Code Title 8, 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

77. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, 8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory conduct.

## AS A SEVENTH CAUSE OF ACTION
## **NEGLIGENCE**

78. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

79. Defendants owed Plaintiff a duty to properly educate their students and residents of sexual violence and assault and to take all other appropriate measures to prevent sexual violence against their students and residents.

80. Defendants also had a duty to take appropriate action to protect Plaintiff from her rapists and the effects of the sexual violence after the incident.

81. Defendants also knew or should have known of the deviant sexual and/or social propensities of Student 1 and Student 2 and failed to take appropriate action.

82. Defendants breached these duties.

83. As a result, Plaintiff was damaged in an amount to be determined at the time of trial.

## AS AN EIGHTH CAUSE OF ACTION
## **NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

84. Plaintiff, individually and on behalf of all persons similarly situated, repeats and realleges each and every allegation made in the above paragraphs of this complaint.

85. Defendants intended both to do the act and to produce emotional distress in Plaintiff.

86. Defendants acted recklessly in deliberate disregard of a high probability that emotional distress would follow.

87. Defendants' actions were extreme and uncommon and extraordinarily despicable to the average member of the community.

88. Plaintiff was injured and harmed thereby.

89. Defendants' negligence was a substantial factor in causing *plaintiff's* serious emotional distress.

**WHEREFORE,** Plaintiff respectfully requests a judgment against the Defendants jointly and severally for all damages including compensatory, emotional distress, statutory, punitive damages, attorneys fees and costs in an amount to be determined at the time of trial and awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful conduct.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

Dated: January 5, 2016
      New York, NY

**DEREK SMITH LAW GROUP, PLLC**
Attorneys for Plaintiff

By: _____
Derek T. Smith, Esq.
30 Broad Street, 35th Floor
New York, NY 10004
(212) 587-0760